Mario Pittoni, J.
This is another of the many proceedings brought to this court, usually a short period before Election Day, to litigate matters of concern to the City of Glen Cove.
The petition asks for an order annulling the certification and determination of Elinor Weldon, Clerk of the City of Glen Cove, which invalidated a petition for a permissive referendum, and declaring the petition to be valid, sufficient and in compliance with the Municipal Home Buie Law, and directing the Clerk to certify nunc pro tunc that the petition is sufficient and valid.
Petitioners, citizens and electors in that city, signed a petition for a referendum pertaining to the law raising salaries for some city officials beginning January 1, 1968. This petition, which contained 1,237 signatures, ivas declared invalid by the City Clerk on the ground that 25 were not notarized, 96' were nonregistered voters, and 300 signatures were invalidated because of a false deposition of the witness to the petition. This latter decision was as follows: “Twelve (12) said petitions containing twenty-five (25) signatures on each petition for a total of three hundred (300) signatures submitted and sworn to by Richard I. Fancher of 47 Crescent Beach Road, Glen Cove, New York, contained a total of thirty-three (33) signatures which appeared to be not genuine when compared with the valid signatures on the voter enrollment books on file at the Board of Elections, Mineóla, New York, and therefore could not have been witnessed by the said Richard I. Fancher as he so declared. These 300 signatures on the twelve (12) petitions in question are therefore declared to be invalid.”
The city also claims that this referendum could not be ordered on a petition because a referendum for the raising of salaries of city -officials effective in the future is not authorized by sections 23 and 24 of the Municipal Home Rule Law that pertain to adoption of local laws. A local law is defined as “ A law (a) adopted pursuant to this chapter or to other authorization of a .state statute or charter by the legislative body of a local government ”. (Municipal Home Rule Law, § 2, subd. 9.)
Petitioners, however, say that this is not an attempt to have a referendum on the adoption of a “ local law ” but that it is a ‘ ‘ charter amendment ’ ’, and is therefore authorized by Part 2 of article 4, “ City Charter Revision ” (§ 37). In this respect, the minutes of' the regular meeting held by the City Council of Glen Cove on May 25, 1967 states' as follows:
“ Section 1. The following paragraph of Section 20 of the Charter of the City of Glen Cove, codified and renumbered as Article II, Section 2-1 constituting Chapter 787 of the Laws of *57 1917 as last amended by local law No. 1-1960 of the City of Glen Cove be and the same is hereby amended so that the same shall read as follows:
‘' ARTICLE II. OFFICERS AND DEPARTMENTS
* * *
‘1 The Commissioner of Finance shall receive a salary of Five Thousand Dollars per year, payable monthly.
* * *
“ Section 3. This local law shall take effect as of January 1st, 1968 * * *.» (Italics added.)
“ Charter ” is defined as “ A state statute or a local law which establishes or continues a specific * * *, city * * * as a municipal corporation or body politic and includes the fundamental provisions defining, extending or limiting its corporate powers or affecting the framework of its government ”, and “ Charter amendment ” is defined as “ any change in an existing charter * * *. A charter amendment may be of any extent and may deal with any number of subjects.” (Municipal Home Rule Law, § 2, subds. 1, 2.)
Under the ‘ ‘ City Charter Revision ’ ’ part of the Municipal Home Rule Law (§ 37) this matter could be brought before the electorate of the city by a referendum. (The city does concede this to be so on pages 6 and 7 of its brief, if the petition was filed pursuant to § 37). The pertinent parts of section 37 are as follows:
“ § 37. Provisions for adoption of city charter amendments * * # initiated by petition.
“ 1. A local law amending a city charter (however extensively) * * *, also may be adopted in accordance with the provisions of this section.
‘ ‘ 2. Qualified electors of a city, in number equal to at least ten per centum of the total number of valid votes cast for governor in such city at the last gubernatorial election, * * * may file in the office of the city clerk a petition for the submission to the electors of the city of such a proposed local law to be set forth in full in the petition. * * *
‘ ‘ 3. Such local law,shall set forth the new matter to be added to the charter * * *; but failure so to set forth any provision of the charter which is in fact superseded shall not invalidate the amendment or new charter or any portion therof. * * *
“ 5. Such petition shall conform to the provisions of section twenty-four of this chapter in relation to petitions. It shall be *58 examined and reported on by the city clerk as prescribed therein, and objections thereto shall be disposed of by the supreme court as prescribed by such section. In addition, the city clerk, * * *, if he certifies that the petition does not comply with all the requirements, shall state in such certificate specifically in what respects it fails to comply. * * * A finding by the city clerk that a petition does not comply with all the requirements of law may be contested in a proceeding in the supreme court.”
The petitions are sufficient in quality and quantity unless the judgment of the City Clerk in disqualifying 300 signatures is permitted to stand. The City Clerk determined, as a handwriting expert, that 33 signatures out of 300 signatures, on 12 sheets, and sworn to as a witness by Bichard I. Fancher, did not appear to be genuine when compared with signatures on the voter enrollment book on file at the Nassau County Board of Elections, Mineóla, New York. She concluded, therefore, that all 300 signatures on the 12 petition sheets were invalid. Thus, the City Clerk, by subtracting these 300 names and the 96 so-called nonregistered voters and the 25 signatures not notarized, or a total of 421 signatures, subtracted from the total of 1,237 signatures, concluded that only 816 valid signatures remained. Since 816 valid signatures were less than the 945 authentic signatures required, she, the City Clerk, determined that the petition for the referendum was invalid.
Assuming, arguendo, that the City Clerk was a handwriting expert and that she could determine that the 33 signatures on the petition were not the same as those on file in the County Board of Elections in Mineóla, as a ministerial officer what authority would she have to hold and declare the other 267 signatures bad? Neither party has given or mentioned to me any authorities that the City Clerk had any such power, discretional or otherwise to warrant her action or conclusion, and during the limited time available to me to render this decision my own efforts have disclosed no such authorities.
The city’s objection that the proposed change or amendment was not fully set forth in the petition as required by section 37 is fallacious. That requirement applies to the presentation of the amendment itself and how the amendment shall read. It does not apply to the petition so long as the substance is there. Be that as it may, the last part of subdivision 3 of section 37 states as follows: “ but failure so to set forth any provision of the charter which is in fact superseded shall not invalidate the amendment or new charter or any portion thereof. ’ ’
*59 In short, this matter is within the confines of article 4, part 2, “ City Charter- Revision ” (§ 37) “ Provisions for adoption of city charter amendments * * * initiated by petition ” (see also, Matter of Cassese v. Katz, 26 A D 2d 248, affd. 18 Ñ Y 2d 694) and the matter can be put on the voting machine by petition. Furthermore, purely as an administrative and not a judicial officer, the City Clerk, assuming that she had the authority to find 33 .signatures invalid, could not thereby declare null and void 267 other* signatures on the same petition sheets. In fact, the other 267 are presumed valid. Then too, if there were some technical omission in the petition regarding a description of the proposed amendment, then section 51 of the Municipal Home Rule Law states that “ This chapter shall be liberally construed.”
Thus, deducting the City Clerk’s findings of 33 unmatched signatures, 96 nonregistered signers and 25 nonnotarized signatures, or deducting 154 signatures from the total of 1,237 signatures that leaves 1,083 valid signatures, more than the required 945 authentic signatures.
Petitioners shall have judgment as requested.